# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN GARCIA, | 1:09-cv-1629 SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 10.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

# FACTUAL BACKGROUND

Plaintiff was born in 1961, completed the twelfth grade, and previously worked as a machine operator and welder. (Administrative Record ("AR") 42, 165-67.) On August 3, 2006, Plaintiff filed applications for DIB and SSI, alleging disability beginning on January 19, 2006, due to carpal tunnel syndrome in both hands, gout in both knees and ankles, heart problems, diabetes, and hypertension. (AR 16, 133-44, 153.)

**A.  Medical Evidence**

**1.  Robert K. Buckenberger, D.P.M.**

Treatment records of Dr. Buckenberger, Plaintiff's treating podiatrist, reveal that on March 29, 2006, Plaintiff complained of pain in his left ankle and foot since tripping over an extension cord and spraining his left ankle in November 2005. (AR 231, 233.)

On April 28, 2006, Plaintiff underwent left ankle surgery. (AR 283.) On June 22, 2006, Plaintiff was "still having a burning pain in the forefoot and pain at the ankle with weight bearing. . . . He is unable to work." (AR 283.) Dr. Buckenberger also "filled out disability paperwork extending off work [sic] through July 28, that will be three months from the time of surgery." (AR 283.)

On August 16, 2006, Dr. Buckenberger completed a disability form in which he opined that, because of Plaintiff's ankle arthritis, it was painful for him to walk, and he would be unable to perform his regular or customary work for twelve months. (AR 253.)

On August 22, 2006, Dr. Buckenberger opined that Plaintiff "cannot work full time." (AR 283.) The doctor "filled out disability papers" and opined that Plaintiff's "[p]robable return to work [would be] in twelve months, if at all." (AR 283.) Dr. Buckenberger recommended that Plaintiff use an ankle brace. (AR 283.)

In July 2007, Dr. Buckenberger reported that Plaintiff was "having pain in the right ankle for the past year. He had left ankle surgery in April [2006] and has developed similar problems on this side." (AR 261.) Because other treatment such as injections and anti-inflammatory medication

provided little relief, Plaintiff requested surgical correction. (AR 261.) Plaintiff, therefore, underwent surgery on his right ankle and foot on July 11, 2007. (AR 258-60.)

### 2.     Rustom Damania, M.D.

On October 14, 2006, Dr. Damania, an internist, performed a consultative examination of Plaintiff. (AR 235-38.) Dr. Damania's diagnoses included (1) obesity, (2) hypertension, (3) diabetes mellitus type two, (4) gout, (5) status post carpal tunnel syndrome in both hands, (6) ganglion cyst in the right wrist, and (7) bursitis of the right shoulder. (AR 238.)

Dr. Damania's functional assessment of Plaintiff was as follows:

[Plaintiff] should be able to stand and walk for six hours, sit for six hours.

No assistive device is necessary.

[Plaintiff] should be able to lift 20 pounds occasionally and 10 pounds frequently.

No postural limitations.

No manipulative limitations.

No definite relevant visual impairment though [he] requires an examination and appropriate eyeglasses.

No communicative impairments. No workplace environmental limitations.

(AR 238.)

### 3.     L.V. Bobba, M.D.

On November 2, 2006, Dr. Bobba, a state agency physician, assessed Plaintiff's physical residual functional capacity ("RFC").[2] (AR 239-43.) Dr. Bobba opined that Plaintiff could (1) occasionally lift and/or carry 50 pounds and frequently 25 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

workday; and (4) perform unlimited pushing and/or pulling with the upper extremities. (AR 240.) Plaintiff could (1) frequently climb ramps and stairs, balance, stoop, kneel, and crouch; and (2) occasionally crawl and climb ladders, ropes, and scaffolds. (AR 241.) Plaintiff was limited to occasional reaching at or above the right shoulder level. (AR 241.) Finally, Plaintiff had no visual, communicative, or environmental limitations. (AR 241-42.)

### 4. Don E. Helland, M.D.

On January 16, 2008, Dr. Helland, a radiologist, completed a questionnaire in which he opined that the combination of Plaintiff's impairments restricted him to doing no more than sedentary work because of chronic low back pain and bilateral elbow/arm pain. (AR 339.) Plaintiff was able to sit only one hour at a time and a total of three to four hours in an eight-hour day, and stand and/or walk five to ten minutes at a time and every hour. (AR 339.) Further, Plaintiff was required to lie down or elevate his legs for ten minutes every hour. (AR 339.) Dr. Helland based his opinion on objective findings of "limited [range of motion] on [Plaintiff's] lumbar spine." (AR 339.) Finally, Dr. Helland opined that Plaintiff had been limited to this degree since July 2007. (AR 339.)

On January 24, 2008, Dr. Helland reviewed an MRI of Plaintiff's lumbar spine, which revealed, among other things, "rather severe degenerative disk disease at the L4-5 level," with "moderate posterior and posterolateral disk bulging" and "moderately severe central spinal stenosis and significant narrowing of the neural foramina at this level." (AR 341.) Dr. Helland further noted that "[a]t the L3-4 level there is mild to moderate posterior and posterolateral disk bulging." (AR 341.)

On February 19, 2008, another MRI of Plaintiff's lumbar spine revealed severe degenerative disc disease at the L4-5 level, with "extensive reactive changes within the vertebral body endplates and the adjacent marrow at the L4-5 level." (AR 340.)

**B.     Administrative Hearing**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 84-109.) On January 8, 2008, ALJ Michael J. Haubner held a hearing in which Plaintiff, Plaintiff's wife, and a vocational expert ("VE") testified. (AR 35-83.)

   **1.     Plaintiff's Testimony**

Plaintiff stated on a work history report as part of his applications for DIB and SSI that his past jobs as a welder and machine operator required him to stand and walk for a total of seven hours in a day. (AR 165-66.) At the hearing, Plaintiff testified that he drove his manual transmission truck an average of three times daily. (AR 43.) Although Plaintiff reported on his applications that he needed help to dress himself, Plaintiff testified at the hearing that he brushed his own teeth and shaved, bathed, and dressed himself. (AR 44, 187.) He also cooked meals and cleaned the kitchen on a daily basis, washed laundry and attended church once a week, and shopped for groceries twice a week. (AR 44-47.)

Plaintiff initially testified that he was fully compliant with his physicians' treatment plans, but later testified that he complied with his weight loss plan about 20% of the time and his diabetes diet about 50% of the time. (AR 48-50.)

Further, according to Plaintiff, he could lift and carry 15 to 20 pounds, stand for an average of 10 minutes at time, sit between 30 minutes and one hour at a time, and walk 200 feet at a time. (AR 50.) Plaintiff initially stated that he had no limitations in reaching with his right arm, but later testified that he could reach above his right shoulder only occasionally. (AR 51.) According to Plaintiff, he had to elevate his legs three hours in an eight-hour workday. (AR 51-52.) Plaintiff further testified that he could concentrate for only an hour at a time because of the pain. (AR 52-53.)

   **2.     Plaintiff's Wife's Testimony**

Plaintiff's wife testified that Plaintiff did not do any yard work or sweep, vacuum, prepare meals, take out the trash, make the bed, or wash the laundry. (AR 77-78.) Mrs. Garcia later testified

that her husband shopped for small grocery items such as bread once a week and prepared meals in a microwave oven. (AR 78, 81.)

According to Mrs. Garcia, she usually instructed her children to wash the laundry, but because she worked, she was uncertain who actually did the laundry. (AR 80.) Further, because she worked at a grocery store, Mrs. Garcia typically brought home groceries daily. (AR 81-82.)

### 3. VE Testimony

A VE testified that Plaintiff's past work as a machine operator as he performed it was semiskilled and light, and Plaintiff's past work as a welder as he performed it was skilled and light.[3] (AR 24, 56-57.)

In response to a series of hypothetical questions posed by the ALJ, the VE testified that a person with the same age, education, and past relevant work history as Plaintiff could perform Plaintiff's past relevant work as he performed it if that person had the RFC as outlined in Dr. Bobba's assessment to (1) lift any carry 50 pounds occasionally and 25 pounds frequently; (2) climb ladders, ropes, and scaffolds occasionally; (3) crawl occasionally; (4) work at or above the right shoulder level occasionally; (5) climb ramps and stairs frequently; and (6) kneel, stoop, and crouch frequently. (AR 58, 240-41.) Alternatively, such a person could perform medium, unskilled jobs such as a floor packager or cashier, even after taking into account Plaintiff's limitation regarding his right shoulder. (AR 59.)

Second, such a hypothetical person could perform Plaintiff's past work if the person had an RFC based on a combination of Dr. Bobba's and Dr. Damania's assessments to (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) climb ladders, ropes, and scaffolds occasionally; (3) crawl occasionally; and (4) work at or above the right shoulder with the right upper extremity occasionally. (AR 59-60, 238, 240-41.) Alternatively, such a person could perform light, unskilled jobs such as a sales attendant, food preparation worker, or ticket taker. (AR 60.)

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Finally, such a hypothetical person could not perform Plaintiff's past relevant work or any other work in the national economy if the person had the limitations based on Plaintiff's testimony to (1) lift and carry 15 to 20 pounds; (2) stand 10 minutes at a time; (3) sit 30 to 60 minutes at a time; (4) walk 200 feet at a time; (5) reach overhead occasionally with the dominant right upper extremity; (6) concentrate in one-hour increments; and (7) elevate his feet three hours out of an eight-hour day. (AR 61.)

**C.     ALJ's Decision**

On May 20, 2008, the ALJ issued a decision finding Plaintiff not disabled since January 19, 2006. (AR 13-28.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of January 19, 2006; and (2) had the severe impairments of "lumbar spine degenerative disk disease, gout, right shoulder bursitis, history of osteotomy surgery on the right ankle with residual scar tissue, osteoarthritis, a history of cardiomyopathy, and obesity"; but (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could perform his past relevant work as he actually performed it. (AR 18-24.) Alternatively, Plaintiff could perform other jobs that exist in significant numbers in the national economy, such as a sales attendant, food preparation worker, and ticket taker. (AR 24-25.)

The ALJ found that Plaintiff had the RFC to perform a wide range of light work that precluded (1) lifting and carrying more than 20 pounds occasionally or 10 pounds frequently; (2) standing, walking, or sitting for more than about six hours in an eight-hour workday; (3) more than occasional crawling and climbing of ladders, ropes, and scaffolding; and (4) more than occasional reaching at or above shoulder level with the right upper extremity. (AR 20.) In so finding, the ALJ adopted "the specific limitations of the State Agency medical consultant on [Plaintiff's] ability to perform no more than occasional crawling, reaching at or above shoulder level with the right upper extremity and climbing of ladders, ropes and scaffolding, and combined them with the light exertional limitations of [Dr. Damania]." (AR 24.)

Regarding the credibility of Plaintiff and his wife, the ALJ found as follows:

> [Plaintiff's] testimony is internally inconsistent. [Plaintiff] initially testified that he is fully compliant with his treatment. However, he later admitted that he was only about 20 percent compliant with his doctor's instructions to lose weight. He also admitted he was only about 50 percent compliant with his diabetic diet instructions. [Plaintiff] initially testified that he . . . could reach above shoulder level with his right upper extremity and that he had no limitation at all on reaching with his right upper extremity. However, he later changed his testimony to indicate he could occasionally, but not frequently, reach above shoulder level with his right arm, and in a later leading question from his representative, [Plaintiff] said he had difficulty reaching in all directions.
>
> [Plaintiff's] testimony was inconsistent with the testimony of his (sequestered) wife at the hearing. [Plaintiff] testified that he cooked once a day, but his wife testified that he did not cook. [Plaintiff] testified that he did laundry once a week, but his wife testified that he did not do any laundry. [Plaintiff's] wife testified that [Plaintiff] shops once a week, but [Plaintiff] testified that he goes shopping five times a week.
>
> I note that [Plaintiff] has a fairly good work history. However, during the past five years he has a sporadic work history.
>
> . . . .
>
> For all of the reasons above, I find [Plaintiff] and his wife are not fully credible. Therefore, their testimony and allegations are given little evidentiary weight.

(AR 21-22 (internal citation omitted).)

Regarding Dr. Helland's opinion, the ALJ found as follows:

> Subsequent to the hearing, [Plaintiff's] representative submitted a one-page fill-in-the-blanks type of form [completed by Dr. Helland] indicating limitations that would restrict [Plaintiff] to less than the full range of sedentary work activity. However, the opinion generally lacked supporting bases for the conclusions regarding the limitations, such as [Plaintiff's] clinical signs, test results, and whether the given limitations were based on [Plaintiff's] subjective complaints or upon objective findings or observations. As objective support for the opinion, a limited range of motion in [Plaintiff's] lumbar spine was noted, but nothing else. . . . Furthermore, the other substantial evidence (discussed throughout this decision) does not fully support the conclusion [in Dr. Helland's form]. For all of the foregoing reasons, I have afforded little weight to [Dr. Helland's opinion].

(AR 22 (internal citation omitted).)

As for Dr. Buckenberger's opinion, the ALJ found as follows:

> The August 22, 2006 treatment record from [Plaintiff's] treating podiatrist states that [Plaintiff] was unable to work full-time, that he would probably be able to return to

8

working in 12 months and recommended that he use an ankle brace. However, this record is vague and no additional details about [Plaintiff's] specific functional limitations were discussed. Additionally, this opinion invades ultimate conclusions that are reserved to the Social Security Administration. A determination that [Plaintiff] is or is not disabled and unable to perform any substantial gainful work activity is a decision reserved to the Commissioner of the Social Security Administration and must be based on Social Security law. . . . Statements of opinion on matters reserved to the Commissioner are not binding upon the Agency. Treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. Because the statements are vague and conclusory and provide no details concerning [Plaintiff's] limitations, I give these statements little evidentiary weight.

(AR 23 (internal citations omitted).)

The ALJ gave "somewhat less evidentiary weight" to the opinion of Dr. Bobba, who "concluded [Plaintiff] was capable of performing medium work activity," because the doctor "did not provide persuasive reasoning for rejecting the opinion of the consultative examiner [Dr. Damania]." (AR 23.) The ALJ concluded that Plaintiff's "impairments supported by the objective medical evidence in the record, including his obesity, are adequately accommodated by a limitation to light work activity." (AR 23.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on July 14, 2009. (AR 1-5.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D. Plaintiff's Appeal**

On September 15, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that (1) the ALJ's RFC finding was not based on a preponderance of the evidence, was not supported by substantial evidence, and was not based on the application of correct legal standards; (2) the ALJ's evaluation of Plaintiff's obesity was based on the application of incorrect legal standards; (3) the ALJ improperly rejected the opinions of Drs. Damania, Helland, and Buckenberger; (4) the ALJ improperly rejected Plaintiff's allegations; and (5) the ALJ's RFC finding was more restrictive than his hypothetical questions, which were legally insufficient.

9

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering

his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform his past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### A.    Plaintiff's Credibility

Plaintiff contends that the ALJ failed to set forth legally sufficient reasons for rejecting his subjective complaints. According to the Commissioner, however, the ALJ gave clear and convincing reasons for finding Plaintiff not entirely credible.

#### 1.    Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

11

impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**2.     Analysis**

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 20-21.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

In considering Plaintiff's credibility, the ALJ found that Plaintiff's testimony was inconsistent internally and with his wife's testimony. (AR 21-22.) As noted above, at the hearing, Plaintiff presented inconsistent testimony regarding his compliance with his treatment and his ability to reach with his right arm. (AR 21-22, 48-50, 51.) Further, Plaintiff's testimony regarding his

12

1  ability to perform daily living activities such as cooking, washing laundry, and shopping conflicted
2  with his wife's testimony in this regard. (AR 22, 78-82.)

3  Inconsistent statements are matters appropriately considered in evaluating a claimant's
4  subjective complaints. In rejecting testimony regarding subjective symptoms, permissible grounds
5  include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony
6  and his conduct or work record, internal contradictions in the testimony, and testimony from
7  physicians and third parties concerning the nature, severity, and effect of the symptoms of which the
8  claimant complains. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Thomas v. Barnhart*, 278
9  F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is
10  believable or not. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

11  Accordingly, the ALJ's findings that Plaintiff's testimony was inconsistent internally and
12  with his wife's testimony were clear and convincing reasons for rejecting Plaintiff's subjective
13  complaints regarding the intensity, duration, and limiting effects of his symptoms. *See Batson v.*
14  *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory
15  testimony unsupported by objective medical evidence constituted substantial evidence in support of
16  ALJ's negative credibility determination). Moreover, the ALJ's reasons were properly supported
17  by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's
18  testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony. *See Turner*
19  *v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).[4]

20  **B.     The ALJ's Consideration of Medical Opinions**

21  The ALJ gave "little evidentiary weight" to Dr. Buckenberger's opinion that Plaintiff was
22  unable to work full-time because it was vague and gave no specific functional limitations. (AR 23.)
23  Further, the doctor's opinion regarded an issue reserved to the Commissioner. (AR 23.) Moreover,

---

[4] Defendant also maintains that Plaintiff's testimony was inconsistent with his daily activities. Because the ALJ did not cite to Plaintiff's daily activities in his decision discounting Plaintiff's credibility, the Court declines to affirm the ALJ's credibility determination on this basis. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))).

the ALJ "afforded little weight" to Dr. Helland's opinion that Plaintiff was restricted to less than the full range of sedentary work because the opinion lacked supporting bases for its conclusions and because other substantial evidence did not support the opinion. (AR 22.) In assessing Plaintiff's RFC, the ALJ adopted Dr. Damania's opinion that Plaintiff was limited to performing work at the light exertional level. (AR 24.)

Plaintiff argues that the ALJ improperly rejected the opinions of Drs. Damania, Helland, and Buckenberger. Defendant maintains, however, that the ALJ properly evaluated the medical opinion evidence and gave specific, legitimate reasons to discount the opinions of Drs. Buckenberger and Helland.

### 1. Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti*, 533 F.3d at 1041.

**2.     Analysis**

The ALJ properly discounted as an issue reserved to the Commissioner Dr. Buckenberger's opinion that Plaintiff was unable to work full-time. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."); 20 C.F.R. §§ 404.1503, 416.903, 404.1527(e), 416.927(e); Social Security Ruling 96-5p.[5]

Further, the ALJ found that Dr. Buckenberger's opinion was vague, conclusory, and not supported by other substantial evidence in the record, which were also specific, legitimate reasons to give the doctor's opinion little weight. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *see also Turner*, 613 F.3d at 1223 (that doctor's opinion was based almost entirely on claimant's self-reporting was specific and legitimate reason to reject doctor's implication that claimant was disabled and could not work); *Batson*, 359 F.3d at 1195 (ALJ's findings that treating physician's opinion was based on claimant's subjective complaints without objective evidence, was "conclusionary in the form of a check-list," and lacked substantive medical findings to support physician's conclusion were specific, legitimate reasons to give opinion minimal evidentiary weight).

Plaintiff contends, however, that the ALJ's failure to recontact Dr. Buckenberger was reversible error. The ALJ's "[r]ejection of the treating physician's opinion on ability to perform any remunerative work does not by itself trigger a duty to contact the physician for more explanation." *McLeod v. Astrue*, No. 09-35190, slip op. 2195, 2202 & n.6 (9th Cir. Feb. 4, 2011) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). Rather, the Commissioner need only seek additional evidence or

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

1  clarification from a treating physician, however, when a medical report contains a "conflict" or an
2  "ambiguity" that must be resolved.  20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

3  Here, there were no conflicts or ambiguities that had to be resolved, nor did the ALJ make
4  such a finding.  Therefore, the ALJ's duty to seek additional evidence in order to develop the record
5  was not triggered.  *See Tonapetyan*, 242 F.3d at 1150 (only ambiguous evidence, or the ALJ's own
6  finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the
7  ALJ's duty to conduct an appropriate inquiry or gather additional information).  Thus, the ALJ was
8  not required to obtain any additional information to fulfill his duty to fully and fairly develop the
9  record.

10  Accordingly, because the ALJ gave specific, legitimate reasons in affording little weight to
11  the opinions of Drs. Buckenberger and Helland, Plaintiff's argument to the contrary is without merit.
12  Plaintiff further maintains, however, that the ALJ "gave no reason for rejecting Dr. Damania's
13  opinions, and he failed to include [the doctor's] assessed restrictions in his vocational hypothetical
14  questions."  The Court addresses Plaintiff's assertion in this regard below.

15  **C.     Hypothetical Questions to VE**

16  Plaintiff next asserts that "the ALJ's vocational hypothetical did not accurately reflect
17  Plaintiff's actual limitations.  The vocational hypothetical failed to include limitations assessed by
18  Drs. Damania, Buckenberger, and Helland, and it failed to include Plaintiff's allegations."  Plaintiff
19  further contends that the ALJ's hypothetical questions "also failed to include the limitations in
20  standing, walking, and sitting [from Dr. Damania's assessment], that the ALJ, himself, found
21  Plaintiff to have."  Defendant contends that the hypothetical questions posed by the ALJ to the VE
22  properly reflected Plaintiff's RFC and the weight of the medical evidence.  According to Defendant,
23  the ALJ did not err in relying on the VE's testimony in finding Plaintiff could perform his past
24  relevant work.

**1.     Legal Standard**

Hypothetical questions posed to a VE must set out all the substantial, supported limitations and restrictions of the particular claimant. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. *See DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. *See Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988).

**2.     Analysis**

An ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Because the ALJ "was not required to incorporate evidence from the opinions of [Plaintiff's] treating physicians, which were permissibly discounted," Plaintiff's argument regarding the incorporation of Drs. Buckenberger's and Helland's assessments and Plaintiff's testimony into the ALJ's hypothetical questions to the VE is unavailing. *Batson*, 359 F.3d at 1197; *see also Thomas*, 278 F.3d at 959-60 (hypothetical question need not include claimant's subjective impairments if ALJ makes specific findings that claimant is not credible).

As for Dr. Damania's functional assessment that Plaintiff could sit for six hours and stand and walk for six hours, Plaintiff maintains that the ALJ failed to include these limitations in any of his hypothetical questions to the VE, although the ALJ incorporated these restrictions on sitting, standing, and walking into his ultimate finding that Plaintiff had an RFC to perform a wide range of light work. Further, Plaintiff asserts that, if Dr. Damania's opinion is credited, Plaintiff cannot perform his past work as actually performed.

"[T]he burden is on the party attacking the agency's determination to show that prejudice resulted from the error." *McLeod*, slip op. at 2205 & n.20 (citing *Shinseki v. Sanders*, 556 U.S. ___,

17

129 S. Ct. 1696, 1705-06 (2009)). Plaintiff contends that, as he reported in his applications, his past relevant work required him to stand and walk for seven hours in a day. Plaintiff asserts that the ALJ, therefore, erred in finding that he had the RFC to perform his past work as he actually performed it. Even if the ALJ had erred in failing to include sitting, standing, and walking restrictions in his hypothetical questions to the VE, the ALJ's alternative ruling at step five that Plaintiff could perform light, unskilled work that existed in significant numbers in the national economy renders the error at step four harmless. *See Tommasetti*, 533 F.3d at 1042 ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five.")

In sum, the ALJ's error, if any, in failing to question the VE about Dr. Damania's restrictions on Plaintiff's ability to sit, stand, and walk was inconsequential to the ALJ's ultimate nondisability determination and was, therefore, harmless. *See id.* (citing *Robbins*, 466 F.3d at 885).

**D.     The ALJ's Consideration of Plaintiff's Obesity**

The ALJ found Plaintiff's obesity to be a severe impairment and concluded that Plaintiff's "impairments supported by the objective medical evidence in the record, including his obesity, are adequately accommodated by a limitation to light work activity." (AR 18, 23.) Relying on *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003), Plaintiff maintains that the ALJ erred in evaluating the impact of Plaintiff's obesity on his overall functioning.

Plaintiff's reliance on *Celaya*, however, is unavailing. In *Celaya*, the ALJ ignored the claimant's obesity as an impairment. *Celaya*, 332 F.3d at 1182-83. In contrast, the ALJ in this case found that a limitation to light work adequately accommodated Plaintiff's impairments, including his obesity. Furthermore, Plaintiff "has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Plaintiff "has not set forth, and there is no evidence in the record, of [sic] any functional limitations as a result of [his] obesity that the ALJ failed to consider." *Id.* at 684. Plaintiff's contention in this regard is, therefore, without merit.

18

**E.     The ALJ's Consideration of Plaintiff's RFC**

Plaintiff argues that, in assessing his RFC, the ALJ failed to consider Plaintiff's impairments of "lumbar degenerative disc disease" and "history of osteotomy surgery on the right ankle with residual scar tissue" because these impairments were not considered by Drs. Damania or Bobba. (AR 18.)  In this case, however, the ALJ considered these impairments to be severe, although they did not meet or equal a listed impairment.  Further, in determining Plaintiff's RFC, the ALJ reviewed the treatment notes and the opinions of the various medical sources in this case.  Thus, even if the ALJ had erred, Plaintiff has not demonstrated how any such error affected the ALJ's ultimate nondisability determination.  Substantial evidence, therefore, supports the ALJ's RFC assessment in this case.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Juan Garcia.

IT IS SO ORDERED.

**Dated:     March 18, 2011**                             /s/ Sheila K. Oberto
                                                                         UNITED STATES MAGISTRATE JUDGE